## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, a foreign corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO: 6:17-CV-540-0RL-41-GJK |
| ROSEN MILLENNIUM, INC., d/b/a ROSEN MILLENNIUM TECHNOLOGYGROUP, a Florida Corporation, | § § § § § | |
| Defendant. | § | |

## DEFENDANT ROSEN MILLENNIUM, INC.'S
## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant, Rosen Millennium, Inc., d/b/a Rosen Millennium Technology Group ("Rosen Millennium"), by counsel, hereby sets forth the following Answer to Plaintiff's Complaint and files its Counterclaims.  For ease of reference, the allegations by Plaintiff, St. Paul Fire & Marine Insurance Company ("St. Paul"), are set forth below *verbatim*, with Rosen Millennium's responses immediately following each allegation.

## JURISDICTION AND VENUE

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

**ANSWER:**    Rosen Millennium objects to Paragraph 1 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium admits the allegations contained in Paragraph 1.


2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon the diversity of the citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

**ANSWER:**   Rosen Millennium objects to Paragraph 2 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium admits the allegations contained in Paragraph 2.

3.      The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75.000.00, exclusive of interest, costs, and attorneys' fees. Rosen, St. Paul's insured, has claimed indemnity for nearly $2.4 million in fines owed to Visa, MasterCard, and American Express as a result of an alleged data breach, as well as other costs and expenses incurred as a result of the alleged data breach.

**ANSWER:**   Rosen Millennium objects to Paragraph 3 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium admits the amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000, exclusive of interest, costs, and attorneys' fees.  Rosen Millennium denies the remaining allegations contained in Paragraph 3.  Answering further, Rosen Millennium states that, as detailed in its Counterclaims, Rosen Millennium seeks coverage for the demand by Rosen Hotels and Resort, Inc. ("Rosen Hotels") that Rosen Millennium pay it damages in the amount of $1,402,970 for (among other things) assessments imposed on Rosen Hotels by MasterCard and American Express plus any additional damages that may be incurred by Rosen Hotels in connection with the cyberattacks.

4.      Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 139l(a) and (b), because the defendant is a resident of the state of Florida and because the defendant is located in Orlando, Florida, which is located in this district and division thereof.

**ANSWER:**   Rosen Millennium objects to Paragraph 4 to the extent it seeks legal

conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium admits the allegations contained in Paragraph 4.

5.      All conditions precedent to the filing of this action have occurred or have been complied with.

**ANSWER:**   Rosen Millennium objects to Paragraph 5 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium is without knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations contained in Paragraph 5.

6.      Pursuant to the requirements of 28 U.S.C. § 2201 and Article Ill, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

**ANSWER:**   Rosen Millennium objects to Paragraph 6 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium admits the allegations contained in Paragraph 6.  Answering further, Rosen Millennium states that, as detailed in its Counterclaims, Rosen Millennium seeks coverage for the demand by Rosen Hotels and Resort, Inc. ("Rosen Hotels") that Rosen Millennium pay it damages in the amount of $1,402,970 for (among other things) assessments imposed on Rosen Hotels by MasterCard and American Express plus any additional damages that may be incurred by Rosen Hotels in connection with the cyberattacks.

## PARTIES

7.      At all times material to this action, Plaintiff St. Paul is and was a Connecticut corporation with its principal place of business in Hartford, Connecticut. Plaintiff is and was a citizen of Connecticut.

**ANSWER:**    Rosen Millennium is without knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations contained in Paragraph 7.

8.     Upon information and belief, at all times material to this action, Defendant Rosen is and was a Florida corporation with its principal place of business in Orlando, Florida.

**ANSWER:**    Rosen Millennium admits the allegations contained in Paragraph 8.

9.     Therefore, because this action is between citizens of different states and the amount in controversy requirement has been met, this Court has jurisdiction. 28 U.S.C. §1332(a)(l).

**ANSWER:**    Rosen Millennium admits the allegations contained in Paragraph 9.

## FACTUAL ALLEGATIONS

10.     Plaintiff St. Paul issued a commercial general liability policy to Rosen, policy number ZPP-15N25399-14-15, with effective dates of February 24, 2014 to February 25, 2015 (the "Policy"). A copy of the Policy is attached heretofore as Exhibit "A" and is fully incorporated herein.

**ANSWER:**    Rosen Millennium admits that in consideration of premiums paid by it to St. Paul, St. Paul issued a commercial general liability policy to Rosen Millennium with the Policy No. ZPP-15N25399-14-15 effective from February 24, 2014 to February 24, 2015 (the "Policy"). Rosen Millennium further states whether St. Paul attached a true and correct copy of the Policy as Exhibit A to the Complaint is subject verification for completeness and accuracy as may be necessary through discovery. Rosen Millennium is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether the Policy is fully incorporated herein and, therefore, denies the allegations. Rosen Millennium denies any

remaining allegations contained in Paragraph 10.

11.     The Policy had limits of $1 million per event, $1 million for advertising injury per

person, and $1 million for personal injury per person, all subject to a $2 million aggregate limit.

**ANSWER:**    Rosen Millennium admits that the Policy attached as Exhibit A to the

Complaint had and continues to have these limits of liability, and states that the Policy itself is

the best evidence of the terms of the Policy.  Rosen Millennium further states whether St. Paul

attached a true and correct copy of the Policy as Exhibit A to the Complaint is subject to

verification for completeness and accuracy as may be necessary through discovery.  Rosen

Millennium denies the remaining allegations contained in Paragraph 11.

12.     The Policy provided, in relevant part:

### What This Agreement Covers

**Bodily injury and property damage liability**

We'll pay amounts any protected person is legally required to pay
as damages for covered bodily injury or property damage that:

- Happens while this agreement is in effect; and

- Is caused by event.

Protected person means any person or organization that qualifies as
a protected person under the Who Is Protected Under This
Agreement section.

Bodily injury means any physical harm, including sickness or
disease, to the physical health of other persons.

*****

*Property damage* means:

- physical damage to tangible property of others, including
  all resulting loss of use of that property; or

- loss  of  use  of  tangible  property  of  others  that  isn't

5

physically damaged

\*\*\*\*\*\*

*Tangible property* does not include data.

\*\*\*\*\*\*

Event means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*\*\*\*

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

- results from your business activities; and

- is caused by a personal injury offense committed while this agreement is in effect.

*Personal injury* means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.

*Personal injury offense* means any

- False arrest, detention, or imprisonment.

- Malicious prosecution.

- Wrongful entry into, or wrongful eviction from, a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.

- Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.

- Libel, or slander, in or with covered material.

- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- Making known to any person or organization covered material that violates a person's right of privacy.

6

*Covered material* means any material in any form of expression, including material made known in or with any electronic means of communications, such as the Internet.

**Advertising injury liability**.  We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

- results from the advertising of your products, your work, or your completed work; and

- is caused by an advertising injury offense committed while this agreement is in effect.

*Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:

- Libel, or slander, in or with covered material.

- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- Making known to any person or organization covered material that violates a person's right of privacy.

- Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.

*Advertising* means attracting the attention of other by any means for the purpose of:

- Seeking customers or supporters; or

- Increasing sales or business.

*Advertising material* means any covered material that:

- is subject to copyright law; and

- others use and intended to attract attention in their advertising.

******

**Right and duty to defend a protected person.**

7

We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement.  We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent.  But we won't have a duty to perform any other act or service.  We'll have the right to investigate any event, offense, claim, or suit to the extent we believe is proper.  We'll also have the right to settle any claim or suit within:

- any applicable deductible; or

- the available limits of coverage.

******

*Claim* means a demand that seeks damages.

******

### Exclusions — What This Agreement Won't Cover

**Contract liability**.  We won't cover injury or damage for which the protected person has assumed liability under any contract or agreement.

**ANSWER:**    Rosen Millennium admits that the Policy attached as Exhibit A to the Complaint contains these provisions, and states that the Policy itself is the best evidence of the terms of the Policy.   Rosen Millennium denies that Paragraph 12 contains a complete and accurate description of all the terms and conditions of subparts titled "What This Agreement Covers" and "Exclusions – What This Agreement Won't Cover."   Rosen Millennium further states whether St. Paul attached a true and correct copy of the Policy as Exhibit A to the Complaint is subject verification for completeness and accuracy as may be necessary through discovery.

13.    This declaratory relief action concerns a claim arising out of an alleged attack on Rosen's data network-in particular, those servers upon which Rosen stored the credit card information of its customers.

**ANSWER:**    Rosen Millennium admits that this is a declaratory relief action but denies

the action concerns a claim arising out of an alleged attack on Rosen Millennium's data network-in particular, those servers upon which Rosen Millennium stored the credit card information of its customers.  Answering further, Rosen Millennium states that this is a declaratory judgment action concerning a claim arising out of cyberattacks on Rosen Hotels' data network exposing payment card numbers belonging to Rosen's Hotels' customers.

14.     On or about February 3, 2016, Rosen began to received [*sic*] reports pertaining to patterns of unauthorized charges on customer cards shortly after they were used by guests during their stay at Rosen's various hotels.

**ANSWER:**     Rosen Millennium denies the allegations contained in Paragraph 14. Answering further, Rosen Millennium admits that on or about February 3, 2016, the United States Secret Service notified Rosen Hotels that a pattern of fraudulent charges had been identified on payment cards legitimately used at Rosen Hotels.

15.     Shortly thereafter, Rosen allegedly retained forensic investigators, allegedly at a cost of approximately $150,000, to determine whether a breach had occurred, and if so, its source.

**ANSWER:**     Rosen Millennium denies the allegations contained in Paragraph 15. Answering further, Rosen Millennium admits that Rosen Hotels engaged a forensic investigator at a cost of at least $150,000.

16.     The investigation allegedly revealed that malware had been installed on the payment network, and that cards used at the hotel chain between September 2014 and February 2016 may have been affected.

**ANSWER:**     Rosen Millennium denies the allegations contained in Paragraph 16. Answering further, Rosen Millennium admits that the investigator alleged that separate pieces of

malware were present on Rosen Hotels' network between the time periods of September 2, 2014 to September 16, 2015; September 25, 2015 to February 10, 2016; and February 11, 2016 to February 18, 2016 might have been affected.

17.     Indeed, there were allegedly three windows of the breach: September 2, 2014 to September 15, 2015; September 25, 2015 to February 10, 2016; and February 11, 2016 to February 18, 2016.

**ANSWER:**     Rosen Millennium denies the allegations contained in Paragraph 17. Answering further, Rosen Millennium admits that the investigator identified alleged that separate pieces of malware were present on Rosen Hotels' network between the time periods of September 2, 2014 to September 16, 2015; September 25, 2015 to February 10, 2016; and February 11, 2016 to February 18, 2016 might have been affected.

18.     As a result, on or about March 4, 2016, in compliance with various state laws, Rosen disclosed to the group of allegedly affected customers that a data breach may have occurred, and encouraged its affected customers to remain vigilant for signs of unauthorized charges.

**ANSWER:**     Rosen Millennium objects to Paragraph 18 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium states that Rosen Hotels sent out notification letters to potentially affected customers..

19.     In compliance with these state breach disclosure laws, Rosen allegedly incurred approximately $50,000 in attorneys' fees, $15,000 in fees to a crisis management firm, and $40,000 in costs for the notifications themselves.

**ANSWER:**   Rosen Millennium objects to Paragraph 19 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium states that Rosen Hotels incurred at least $50,000 in attorneys' fees, $14,000 in fees to a crisis management firm, and $14,000 in costs for the notifications themselves.

20.     As a result of the alleged attack and the findings of the investigation, and in accordance with their respective card services agreements, Visa, MasterCard, and American Express allegedly imposed substantial fines on Rosen.

**ANSWER:**   Rosen Millennium denies the allegations contained in Paragraph 20. Answering further, Rosen Millennium states that as a result of the cyberattacks, Post Integrations, the payment card processor for Rosen Hotels, has asserted that Rosen Hotels is liable for fraudulent charges and card replacement costs owed to MasterCard that allegedly resulted from the cyberattacks.  Further, American Express has asserted that Rosen Hotels is liable for card replacement costs and a cybersecurity non-compliance fee.

21.     MasterCard allegedly imposed a fine of $1,005,139.72 on Rosen in connection with the breach.

**ANSWER:**   Rosen Millennium denies the allegations contained in Paragraph 21. Answering further, Rosen Millennium states that as a result of the cyberattacks, Rosen Hotels is liable for fraudulent charges and card replacement costs owed to MasterCard in the amount of $1,005,139.72.

22.     American Express allegedly imposed a fine of $128,830.00 in connection with the breach.

**ANSWER:**   Rosen Millennium denies the allegations contained in Paragraph 22.

11

Answering further, Rosen Millennium states that a result of the cyberattacks, American Express has imposed an assessment against Rosen Hotels in the amount of $128,830.00.

23.     Visa allegedly imposed a fine over $1 million in connection with the breach.

**ANSWER:**     Rosen Millennium denies the allegations contained in Paragraph 23.

24.     In all, Rosen allegedly incurred economic loss of approximately $2.4 million.

**ANSWER:**     Rosen Millennium denies the allegations contained in Paragraph 24.

25.     On or about December 29, 2016, Rosen first provided St. Paul written notification of the breach.  The notification simply stated "Credit card systems breach. Loss dates range from Sept 2014 thru Feb 2016."  It further instructed St. Paul to contact Rosen's insurance broker for additional information.

**ANSWER:**     Rosen Millennium admits that on or about December 29, 2016, Jason Vega of ProvInsure, Inc., on behalf of Rosen Millennium, provided written notification of the cyberattacks to St. Paul, that such written notification contains the specially quoted statements, and that the written notification instructed St. Paul to contact Rosen Millennium's insurance broker for additional information.  Rosen Millennium states that the written notification itself is the best evidence of the terms of the written notification.  Rosen Millennium denies that Paragraph 25 contains a complete and accurate description of all the terms and statements contained in the written notification.  Rosen Millennium denies any remaining allegations contained in Paragraph 25.

26.     In a phone conversation shortly after St. Paul was notified, Rosen's broker advised that Rosen had received demands for damages from the credit card companies.  It further advised that Rosen was seeking a coverage position letter.

**ANSWER:**    Rosen Millennium admits the allegations contained in Paragraph 26.

27.    St. Paul provided a coverage denial to the insured on or about March 2, 2017, stating that there was no coverage for Rosen's claim. It further invited Rosen to provide additional information that might bear on St. Paul's coverage obligations under the Policy.

**ANSWER:**    Rosen Millennium admits that on or about March 2, 2017, St. Paul sent a coverage denial letter in connection with the cyberattacks to Rosen Millennium, stating (among other things) that there was "no duty to defend or indemnify Rosen and unfortunately, Travelers must decline to handle this matter for Rosen" and that "[i]f you have any information that you would like us to consider for our coverage analysis, or if you receive additional information that may bear upon our coverage decisions, please forward it to us immediately."  Rosen Millennium states that the coverage denial letter is the best evidence of the terms of the coverage denial letter.  Rosen Millennium denies that Paragraph 27 contains a complete and accurate description of all the terms and statements contained in the coverage denial letter.  Rosen Millennium denies any remaining allegations contained in Paragraph 27.

28.    Rosen has provided no additional information to date.

**ANSWER:**    Rosen Millennium admits the allegations contained in Paragraph 28. Answering further, Rosen Millennium states that St. Paul has not requested additional information from Rosen Millennium since on or about March 2, 2017.  To the extent that Paragraph 28 implies a legal obligation of Rosen Millennium to provide further information after St. Paul wrongfully breached the contract, Paragraph 28 is denied.

29.    As set forth in its denial letter and as discussed herein, it is St. Paul's position that based on the information reviewed to date, there is no coverage for any of the claims asserted

against Rosen.

**ANSWER:**   Rosen Millennium is without knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations contained in Paragraph 29.

30.    Finally, the data breach creates the potential for latent claims by individual victims of the data breach who may assert claims against Rosen, for which Rosen may request a defense. In the event that such claims are presented, this complaint may need to be amended to reflect such claims.

**ANSWER:**   Rosen Millennium objects to Paragraph 30 to the extent it suggests that any claims against Rosen Millennium have merit, but otherwise admits the allegations of Paragraph 30.

## COUNT I — DECLARATORY RELIEF (COVERAGE)

31.    Plaintiff St. Paul hereby incorporates by reference and restates paragraphs 1-29[sic] as if fully stated herein.

**ANSWER:**   Rosen Millennium incorporates its answers to Paragraphs 1-30 as its answer to Paragraph 31.

32.    The costs incurred by Rosen to notify data subjects and regulatory agencies of the data breach (including the forensic investigation, attorneys['] fees, crisis management, and notification costs as outlined above), as well as the fines and penalties levied by Visa, MasterCard, and American Express, are not covered under the Policy because they do not result from bodily injury, property damage, personal injury, or advertising injury under the Policy.

**ANSWER:**   Rosen Millennium objects to Paragraph 32 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required,

Rosen Millennium denies the allegations contained in Paragraph 32.

33.     The fines and penalties levied by Visa, MasterCard, and American Express are not covered under the Policy because they are excluded under the Contract Liability exclusion and they do not constitute covered damages under the Policy.

**ANSWER:**   Rosen Millennium objects to Paragraph 33 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium denies the allegations contained in Paragraph 33.

34.     The remaining costs incurred by Rosen do not constitute covered damages under the Policy.

**ANSWER:**   Rosen Millennium objects to Paragraph 34 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium denies the allegations contained in Paragraph 34.

35.     Accordingly, St. Paul has neither a duty to defend Rosen with respect to the fines and penalties levied by Visa, MasterCard, and American Express, or any of the other costs incurred by Rosen, nor does it have a duty to indemnify Rosen for same.

**ANSWER:**   Rosen Millennium objects to Paragraph 35 to the extent it seeks legal conclusions which do not require a responsive pleading.  To the extent a response is required, Rosen Millennium denies the allegations contained in Paragraph 35.

36.     An actual, present, and justiciable controversy exists between Plaintiff St. Paul and Defendant Rosen warranting the entry of a declaratory judgment by this Court that the Policy does not provide coverage for the damages claimed.

**ANSWER:**   Rosen Millennium admits the allegations contained in Paragraph 36.

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the defenses below, Rosen Millennium expressly reserves the right to assert additional defenses and/or affirmative defenses as investigation, discovery, and review of information in this matter progresses.

## FIRST AFFIRMATIVE DEFENSE

Rosen Millennium denies any allegations in St. Paul's Complaint that have not been expressly admitted herein.

## SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE

The Complaint is barred in whole or part by the doctrines of estoppel, waiver, unclean hands, and/or laches.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or part by the terms and conditions of the Policy at issue.

## FIFTH AFFIRMATIVE DEFNSE

The Complaint is barred in whole or part by the doctrine of reasonable expectations.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or part because St. Paul has breached or repudiated its contractual obligations under the terms of the Policy at issue.

## SEVENTH AFFIRMATIVE DEFENSE

The terms of the Policy are vague and ambiguous as written and applied.

## EIGHTH AFFIRMATIVE DEFENSE

16

The Complaint is barred in whole or in part by considerations of public policy, because St. Paul and/or affiliated insurance companies sought approval from the Florida insurance commissioner of an endorsement more specific to data privacy incidents after selling the subject insurance policy to Rosen Millennium, and public policy should prevent St. Paul from a narrow interpretation of coverage that could have been accomplished by an endorsement approved by the Florida insurance commissioner.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrine of unjust enrichment, because St. Paul and/or affiliated insurance companies sought approval from the Florida insurance commissioner of an endorsement more specific to data privacy incidents after selling the subject insurance policy to Rosen Millennium, and it would be unjustly enriched to have accepted premiums for a broader insurance policy than the position that it asserts it may apply here.

## TENTH AFFIRMATIVE DEFENSE

Rosen Millennium asserts, by reference, any and all affirmative defenses available to it under the Federal Rules of Civil Procedure and any other applicable laws.

## RESERVATION OF RIGHTS

Rosen Millennium reserves the right to amend or assert additional defenses as investigation and discovery continues.

WHEREFORE, Rosen Millennium respectfully requests that St. Paul take nothing by way of its Complaint, that judgment be entered dismissing the Complaint with prejudice and that, pursuant to the Counterclaims of Rosen Millennium set forth below, this Court enter judgment in Rosen Millennium's favor and against St. Paul, that Rosen Millennium be awarded its attorneys' fees, costs, and expenses in defending this action and prosecuting the Counterclaims, and that

Rosen Millennium be awarded all other just and proper relief.

## COUNTERCLAIMS AGAINST ST. PAUL

Counterclaimant, Rosen Millennium, Inc., d/b/a Rosen Millennium Technology Group ("Rosen Millennium"), by and through counsel, for its Counterclaims against Counterclaim Defendant, St. Paul Fire & Marine Insurance Company ("St. Paul"), states and alleges as follows:

## PARTIES

1.      Rosen Millennium now is, and at all times relevant to this action was, a corporation incorporated and existing under the laws of the State of Florida with its principal place of business in Orlando, Florida.  Rosen Millennium is a citizen of Florida.

2.      On information and belief, St. Paul has alleged that it now is, and at all times relevant to this action was, a corporation incorporated and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  St. Paul has alleged that it is a citizen of Connecticut.

## JURISDICTION AND VENUE

3.      This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

4.      This Court has jurisdiction over this action based upon complete diversity pursuant to 28 U.S.C. § 1332 because the parties to this action are citizens of different States and based upon the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Rosen Millennium is a resident of the State of Florida and because Rosen Millennium is subject to this

Court's personal jurisdiction.

6.      All conditions precedent to the filing of this action have occurred or have been complied with.

7.      Pursuant to the requirements of 28 U.S.C. § 2201 and Article Ill, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## FACTUAL ALLEGATIONS

8.      Rosen Millennium incorporates its statements and allegations in Paragraphs 1-36 of its Answer to St. Paul's Complaint as if fully set forth herein.

## THE UNDERLYING CLAIMS

9.      This is a declaratory judgment action concerning an insurance claim arising out of certain cyberattacks perpetrated against the data network of Rosen Hotels and Resorts, Inc. ("Rosen Hotels") which exposed payment card numbers belonging to Rosen Hotels' customers.

10.     On or about February 3, 2016, the United States Secret Service notified Rosen Hotels and Resorts, Inc. ("Rosen Hotels") that a pattern of fraudulent charges had been identified on customers' payment cards legitimately used at Rosen Hotels.

11.     On or about February 8, 2016, Rosen Hotels retained a forensic investigator to determine whether a data breach(es) had occurred and, if so, its source, and to remediate any data breach(es).

12.     The forensic investigator alleged that malware was present on Rosen Hotels' network, and that customers' payment cards legitimately used at Rosen Hotels might have been compromised by the cyberattacks.

13.     The forensic investigator alleged that separate pieces of malware were present during the following three time periods:  September 2, 2014 to September 16, 2015; September

25, 2015 to February 10, 2016; and February 11, 2016 to February 18, 2016.

14.     On or about March 4, 2016, in compliance with various state laws, Rosen Hotels

disclosed to the group of potentially affected customers that a data breach may have occurred.

15.     In compliance with these state breach disclosure laws, Rosen Hotels incurred

substantial attorneys' fees, crisis management fees, and notification costs.

16.     As a result of the findings of the investigator about the cyberattacks, and in

accordance with their respective card services agreements with Rosen Hotels, MasterCard and

American Express imposed assessments related to the costs of replacing cards and fraudulent

charges allegedly due to the cyberattacks upon Rosen Hotels.

## THE POLICIES

### 2014-2015 POLICY

17.     In consideration of premiums paid by Rosen Millennium to St. Paul, St. Paul

issued a commercial general liability policy to Rosen Millennium with the Policy No. ZPP-

15N25399-14-15 effective from February 24, 2014 to February 24, 2015 (the "14-15 Policy"), a

copy of which (subject to verification for completeness and accuracy as may be necessary

through discovery or otherwise) is attached as **Exhibit A**.

18.     The Policy provides, in relevant part:

**What This Agreement Covers**

**Bodily injury and property damage liability**

We'll pay amounts any protected person is legally required to pay
as damages for covered bodily injury or property damage that:

- happens while this agreement is in effect; and

- is caused by event.

*Protected person* means any person or organization that qualifies
as a protected person under the Who Is Protected Under This
Agreement section.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons.

******

*Property damage* means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or

- loss of use of tangible property of others that isn't physically damaged

******

*Tangible property* does not include data.

******

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

******

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

- results from your business activities; and

- is caused by a personal injury offense committed while this agreement is in effect.

*Personal injury* means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.

*Personal injury offense* means any

- False arrest, detention, or imprisonment.

- Malicious prosecution.

- Wrongful entry into, or wrongful eviction from, a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.

- Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, if such entry

or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.

- Libel, or slander, in or with covered material.

- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- Making known to any person or organization covered material that violates a person's right of privacy.

*Covered material* means any material in any form of expression, including material made known in or with any electronic means of communications, such as the Internet.

**Advertising injury liability**. We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

- results from the advertising of your products, your work, or your completed work; and

- is caused by an advertising injury offense committed while this agreement is in effect.

*Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:

- Libel, or slander, in or with covered material.

- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- Making known to any person or organization covered material that violates a person's right of privacy.

- Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.

*Advertising* means attracting the attention of other by any means for the purpose of:

- seeking customers or supporters; or

- increasing sales or business.

*Advertising material* means any covered material that:

- is subject to copyright law; and

- others use and intended to attract attention in their advertising.

19.     Under the terms of the 14-15 Policy, St. Paul agreed to defend and indemnify Rosen Millennium against a "claim or suit for injury or damage covered by this agreement."

20.     The 14-15 Policy defines "Claim" as a "demand that seeks damages."

21.     The 14-15 Policy defines "[i]njury or damage" as "bodily injury, personal injury, or advertising injury; or property damage."

22.     The 14-15 Policy provides limits of liability of $1 million for personal injury each person limit, $1 million for advertising injury each person limit, and $1 million for each event limit.

23.     The 14-15 Policy provides a general total limit of liability of $2 million.

24.     At all times relevant hereto, all pertinent terms and conditions of the 14-15 Policy have been satisfied or excused.

25.     The 14-15 Policy was and remains in full force and effect at all times relevant hereto.

### 2015-2016 POLICY

26.     In consideration of premiums paid by Rosen Millennium to St. Paul, St. Paul issued a commercial general liability policy to Rosen Millennium with the Policy No. ZPP-15N25399-15-15 effective from February 24, 2015 to February 24, 2016 (the "15-16 Policy"), a copy of which (subject to verification for completeness and accuracy as may be necessary through discovery or otherwise) is attached as **Exhibit B**.

27.     The 15-16 Policy provides, in relevant part:

**<u>What This Agreement Covers</u>**

**Bodily injury and property damage liability**

We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:

- happens while this agreement is in effect; and

- is caused by event.

*Protected person* means any person or organization that qualifies as a protected person under the Who Is Protected Under This Agreement section.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons.

******

*Property damage* means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or

- loss of use of tangible property of others that isn't physically damaged

******

*Tangible property* does not include data.

******

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

******

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

- results from your business activities; and

- is caused by a personal injury offense committed while this agreement is in effect.

24

*Personal injury* means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.

*Personal injury offense* means any

- False arrest, detention, or imprisonment.

- Malicious prosecution.

- Wrongful entry into, or wrongful eviction from, a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.

- Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises.

- Libel, or slander, in or with covered material.

- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- Making known to any person or organization covered material that violates a person's right of privacy.

*Covered material* means any material in any form of expression, including material made known in or with any electronic means of communications, such as the Internet.

**Advertising injury liability**.   We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

- results from the advertising of your products, your work, or your completed work; and

- is caused by an advertising injury offense committed while this agreement is in effect.

*Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:

- Libel, or slander, in or with covered material.

25

- Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

- Making known to any person or organization covered material that violates a person's right of privacy.

- Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.

*Advertising* means attracting the attention of other by any means for the purpose of:

- seeking customers or supporters; or

- increasing sales or business.

*Advertising material* means any covered material that:

- is subject to copyright law; and

- others use and intended to attract attention in their advertising.

28. Under the terms of the 15-16 Policy, St. Paul agreed to defend and indemnify Rosen Millennium against a "claim or suit for injury or damage covered by this agreement."

29. The 15-16 Policy defines "Claim" as a "demand that seeks damages."

30. The 15-16 Policy defines "[i]njury or damage" as "bodily injury, personal injury, or advertising injury; or property damage."

31. The 15-16 Policy provides limits of liability of $1 million for personal injury each person limit, $1 million for advertising injury each person limit, and $1 million for each event limit.

32. The 15-16 Policy provides a general total limit of liability of $2 million.

33. At all times relevant hereto, all pertinent terms and conditions of the 15-16 Policy have been satisfied or excused.

34. The 15-16 Policy was and remains in full force and effect at all times relevant

26

hereto.

## ST. PAUL'S DECISION NOT TO INCLUDE A DATA BREACH-SPECIFIC EXCLUSION IN THE 2015-1016 POLICY

35.     As detailed by the United States Supreme Court, "most CGL insurance written in the United States is written on" forms drafted by "Insurance Services Office, Inc. (ISO), an association of approximately 1,400 domestic property and casualty insurers . . . ." *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 772 (1993).  "ISO develops standard policy forms and files or lodges them with each State's insurance regulators; most CGL insurance written in the United States is written on these forms." *Id.*

36.     "Effective May 1, 2014 in many jurisdictions, ISO introduced several endorsements addressing the access or disclosure of confidential or personal information." *ISO Comments on CGL Endorsements for Data Breach Liability Exclusions*, Ins. J. (July 18, 2014), available at http://www.insurancejournal.com/news/east/2014/07/18/332655.htm (last visited June 16, 2017) (quoting Ron Beiderman, Ass't VP, Commercial Casualty at ISO).  Travelers[1] recognized ISO's new exclusions, but prepared its own "proprietary endorsements addressing the access to or disclosure of confidential or personal information," and filed it with the Florida Office of Insurance Regulation on April 28, 2014.[2]

37.     Travelers' submission to the Florida insurance commissioner included several forms purportedly specific to data breaches, amending the standard form CGL policy to exclude

---

[1] On April 1, 2004, St. Paul and Travelers merged to form The St. Paul Travelers Companies.  *See* https://www.travelers.com/about-us/flash/history.html (last visited June 16, 2017).  *See also* https://www.travelers.com/about-us/docs/TRVCALicensedCompanies.pdf (noting that St. Paul Fire and Marine Insurance Company is among many entities constituting "Travelers companies . . . ."  Further, the 14-15 and 15-16 Policies sold and issued to Rosen Millennium are noted multiple times throughout the Policies as being written on "The Travelers Indemnity Company" and "The St. Paul Travelers Companies, Inc." forms.  Ex. A; Ex. B.

[2] For ease of reference, the documents have been attached hereto as **Exhibit C**.  These materials also are available by an internet search via Florida's Office of Insurance Regulation, at https://apps8.fldfs.com/IFileExternalSearch, and performing an "Advanced Search" for Policy/Form Number CG D4 71 01 15, under the Property & Casualty tab (last visited June 16, 2017).

"'Personal injury' . . . arising out of any access to or disclosure of any person's or organization's confidential or personal information." *E.g.*, Ex. C at page 1 of 20. Travelers changed the definition of "personal injury" to exclude an offense that "[d]iscloses information about a person's private life." *Id.* at page 1 of 2. It explained that its proposed edit "corresponds to the reductive impact of ISO's filing of Access Or Disclosure Of Confidential Or Personal Information Exclusions for Coverage B." *Id.*

38.     The Florida insurance commissioner stamped the forms containing Travelers' amended policy language, "Approved" with a "Date of Action:  06/05/2014," "FL OFFICE OF INSURANCE REGULATION"; a June 5, 2014 letter from the Office of Insurance Regulation to Travelers confirms that the forms were approved as of that date. Ex. C (granting approval and noting that Travelers planned on using the form starting on March 1, 2015). June 5, 2014 was nearly one year before the "Issue Date" of February 12, 2015 for the 15-16 Policy. *See* Ex. B.

39.     Although the 15-16 Policy was not issued until eight months after the "Approved" date for the Travelers exclusion for "Disclosure of Confidential or Personal Information," Travelers chose to delay the use of the exclusion until March 2015 and did not include that exclusion in the 15-16 Policy. *See generally id.*

## ST. PAUL'S COVERAGE DENIAL

40.     On or about December 29, 2016, Jason Vega of ProvInsure, Inc., on behalf of Rosen Millennium, provided written notification of the cyberattacks to St. Paul, a true and correct copy of which is attached hereto as **Exhibit D**.

41.     On or about March 2, 2107, St. Paul issued a coverage denial letter, disclaiming a duty to defend or indemnify Rosen Millennium in connection with the cyberattacks for the following reasons:

•   "The allegation of a data breach does not meet the definitions of bodily injury,

property damages, personal injury or advertising injury as defined by the policy."

- "The costs Rosen Hotels & Resorts paid for its own costs for forensic specialists, attorneys, crisis management and notification costs are not the result of bodily injury, property damage, personal injury or advertising injury as those terms are defined in the policy."

- "The assessments from MasterCard, American Express and Visa are not the result of claims for bodily injury, property damage, personal injury or advertising injury as those terms are defined in the policy."

- "Travelers reserves the right to assert the Contract Liability exclusion with respect to the claims for assessments from the credit card companies."

A true and correct copy of the letter from St. Paul to Rosen Millennium is attached hereto as **Exhibit E**.

42.    On or about June 5, 2017, Rosen Hotels sent a letter to Rosen Millennium, asserting that:

> As you are aware, Rosen Hotels and Resorts, Inc. (RHR) became aware of a data breach in March of 2016, in which Millennium Technology Group, Inc. (MTG) made private information known to third parties that violated a credit card holder's right of privacy.  RHR has incurred damages thus far in the amount of $1,402,970 and anticipates significant additional damages.  RHR demands MT[G] to immediately pay RHR damages relating to the data breach in the amount of $1,402,970 plus any additional damages which will be incurred.  Please put your insurance company on notice regarding this claim immediately.

A true and correct copy of the letter from Rosen Hotels to Rosen Millennium ("Rosen Hotels' Demand") is attached hereto as **Exhibit F**.

43.    On or about June 7, 2017, counsel provided written notification of the Rosen Hotels' Demand to counsel for St. Paul, a true and correct copy of which is attached hereto as **Exhibit G**.

44.     As of the date of this filing, St. Paul has not withdrawn its coverage declination disclaiming a duty to defend or indemnify Rosen Millennium in connection with the cyberattacks and, thus, a case or controversy exists and has existed between the parties since the beginning of this action and an action for declaratory judgment is ripe and appropriate.

## FIRST COUNT
### (*Declaratory Judgment – Duty to Defend*)

45.     Rosen Millennium realleges and reincorporates the allegations contained in Paragraphs 1 to 44 of the Counterclaims as if fully set forth herein.

46.     Under the Policies, St. Paul is obligated to provide Rosen Millennium with a full and complete defense for any potentially covered "claim or suit for injury or damage covered by this agreement."

47.     The Rosen Hotels' Demand is covered, or at the very least, potentially covered under the terms of the "property damage" and "personal injury" provisions of the Policies.

48.     As of the date of this filing, St. Paul has not withdrawn its coverage declination disclaiming a duty to defend or indemnify Rosen Millennium in connection with the cyberattacks and, thus, a case or controversy exists between St. Paul and Rosen Millennium regarding the construction and interpretation of the Policies and whether St. Paul has a duty to defend Rosen Millennium in connection with the Rosen Hotels' Demand pursuant to the Policies.

49.     Pursuant to 28 U.S.C. §2201, Rosen Millennium seeks a declaration from the Court that St. Paul has a duty to defend Rosen Millennium in connection with the Rosen Hotels' Demand pursuant to the Policies.

## SECOND COUNT
### (*Declaratory Judgment – Duty to Indemnify*)

50.     Rosen Millennium realleges and reincorporates the allegations contained in Paragraphs 1 to 49 of the Counterclaims as if fully set forth herein.

51.     The Rosen Hotels' Demand is covered under the terms of the "property damage" and "personal injury" provisions of the Policies.

52.     St. Paul's contention that the Contract Liability exclusion in the Policies eliminates coverage for the damages incurred from the card brand assessments resulting from the cyberattacks is wrong.

53.     The Contract Liability exclusion in the Policies provides in relevant part:

**Contract liability**.  We won't cover injury or damage for which the protected person has assumed liability under any contract or agreement.

But we won't apply this exclusion to injury or damage for which the protected person would have liability without the contract or agreement.

Nor will we apply this exclusion to the liability of another to pay damages for:

- bodily injury or property damage sustained by others if you have assumed such liability under a covered contract made before the bodily injury or property damage happens; or

- personal injury or advertising injury sustained by others if you have assumed such liability under a covered contract made before the offense that causes such injury is committed.

54.     The exclusion for Contract Liability in the Policies does not eliminate coverage for the card brand assessment portion of the Rosen Hotels' Demand because there is no contract between Rosen Millennium and the card brands whereby Rosen Millennium assumed liability associated with assessments imposed on Rosen Hotels.

55.     As of the date of this filing, St. Paul has not withdrawn its coverage declination disclaiming a duty to defend or indemnify Rosen Millennium in connection with the cyberattacks and, thus, a case or controversy exists between St. Paul and Rosen Millennium regarding the construction and interpretation of the Policies and whether St. Paul has a duty to defend and indemnify Rosen Millennium in connection with the Rosen Hotels' Demand pursuant to the

Policies.

56.     Pursuant to 28 U.S.C. §2201, Rosen Millennium seeks a declaration from the Court that St. Paul has a duty to potentially indemnify Rosen Millennium in connection with the Rosen Hotels' Demand pursuant to the Policies.

## **RESERVATION OF RIGHTS**

Counterclaim Plaintiffs reserve the right to amend or assert additional counterclaims against Counterclaim Defendants and/or other insurers if any additional insurers join this action as investigation and discovery continues.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff requests the Court grant it the following relief:

1.     That the Court enter a declaratory judgment that Counterclaim Defendant has a duty to defend Counterclaim Plaintiff in connection with the Rosen Hotels' Demand pursuant to the Policies;

2.     That the Court enter a declaratory judgment that Counterclaim Defendant has a potential duty to indemnify Counterclaim Plaintiff in connection with the Rosen Hotels' Demand pursuant to the Policies;

3.     That the Court award Counterclaim Plaintiff compensatory damages;

4.     That the Court award Counterclaim Plaintiff attorneys' fees and costs of this suit;

5.     That the Court award Counterclaim Plaintiff pre-judgment and post-judgment interest; and

6.     That the Court award Counterclaim Plaintiff any other further relief as this Court deems proper and just.

## JURY DEMAND

Defendant and Counterclaim Plaintiff demand a trial by jury on all claims and counterclaims so triable.

Respectfully submitted,

BARNES & THORNBURG LLP


/s/ Carrie M. Raver
Carrie M. Raver, Esq. (admitted *pro hac vice*)
(carrie.raver@btlaw.com)
BARNES & THORNBURG LLP
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Telephone: (260) 423-9440
Facsimile: (260) 424-8316
E-mail:  carrie.raver@btlaw.com

AND

Scott N. Godes, Esq. (admitted *pro hac vice*)
(scott.godes@btlaw.com)
BARNES & THORNBURG LLP
1717 Pennsylvania Ave., N.W.
Suite 500
Washington, DC 20006
Telephone: (202) 289-1313
Facsimile: (202) 289-1330


JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

By:  /s/ Darryl R. Richards
**DARRYL R. RICHARDS, ESQ.**
Florida Bar No. 348929
403 E. Madison Street, Suite 400
Tampa, FL 33602
(813) 225-2500 (Telephone)
(813) 223-7118 (Facsimile)
darrylr@jpfirm.com (Primary Email)
gwenb@jpfirm.com (Secondary Email)
33

*ATTORNEYS FOR ROSEN MILLENNIUM, INC.*
*d/b/a ROSEN MILLENNIUM TECHNOLOGY*
*GROUP*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 16th day of June, 2017, by electronically filing the same with the Clerk of the Court using the efiling system with notification sent to the following:

> Rory Eric Jurman, Esq.
> Aaron M. Dmiszewicki
> FOWLER WHITE BURNETT, P.A.
> One Financial Plaza, Suite 2100
> 100 SE Third Ave.
> Fort Lauderdale, FL  33394

*/s/ Darryl Richards*
Darryl Richards