UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ST. PAUL FIRE & MARINE INSURANCE
COMPANY, a foreign corporation,

      Plaintiff,

v.

ROSEN MILLENNIUM INC., d/b/a/ ROSEN
MILLENNIUM TECHNOLOGY, GROUP, a
Florida corporation, and ROSEN HOTELS &
RESORTS, INC., a Florida corporation,

      Defendants.

CASE NO. 6:17-CV-540-ORL-41-GJK

## RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

      Plaintiff, ST. PAUL FIRE & MARINE INSURANCE COMPANY ("St. Paul"), by and through undersigned counsel, files this Response to Defendants', ROSEN MILLENNIUM, INC. ("Millennium") and ROSEN HOTELS & RESORTS, INC. (the "Hotel") (collectively, "Rosen"), Motion for Judgment on the Pleadings [D.E. 38].

## I.   INTRODUCTION

      At its core, this dispute involves an attempt by one member of the Rosen corporate family (the Hotel) to recover its losses in connection with a hacking event by seeking proceeds from a liability policy issued to a separate member of the Rosen corporate family (Millennium).[1] The Hotel's attempt to trigger coverage under Millennium's policy involves the highly unusual circumstance of having one member of a corporate family send a "demand letter" to a sister company. Tellingly, the "demand letter" is devoid of any facts concerning the nature of the

---

[1] St. Paul insured only Millennium—not the Hotel—in conjunction with this suit. St. Paul has no knowledge as to whether the Hotel might have other insurance available to it.

alleged losses or of Millennium's alleged liability to its corporate sister for those losses. Instead, it merely recites verbatim the language contained in the coverage grant of the policy, without setting out any underlying facts other than the existence of a data breach. Whether this unusual letter constitutes a "claim" under the relevant insurance policy is the subject of ongoing dispute between Millennium and St. Paul, which is attempting to investigate the matter. That factual dispute alone should prevent entry of judgment on the pleadings and allow the parties to proceed to discovery.

Even if the letter were accepted to be a "claim," the Hotel's attempt to trigger the liability policy issued to Millennium would still fail because there is no "personal injury" coverage under the policy issued to Millennium for a hack by third parties against the Hotel. It is undisputed that the systems hacked were not the insured's, and the party bringing the purported claim, the Hotel, is not a party who had its personal information stolen. Indeed, there has not even been an allegation of negligence against the insured.

The issue of coverage for data breaches under general liability policies has been hotly contested over the past several years, during a time period in which many insurers—Travelers[2] included—have developed new products specifically tailored to respond to this new and increasingly common risk. Unfortunately for the Hotel, it did not purchase this specialty coverage for its subsidiaries.

## II.    STANDARD FOR JUDGMENT ON THE PLEADINGS

Judgment on the pleadings is appropriate when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed

---

[2] As the Court is aware, St. Paul's ultimate parent is The Travelers Companies, Inc.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

facts. *Bankers Ins. Co. v. Fla. Residential Prop & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). On a motion for judgment on the pleadings, the court must accept the facts alleged in the complaint as true and draw all inferences that favor the nonmovant, here St. Paul. *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996). The complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* In this way, the standard for a motion for judgment on the pleadings is almost identical to the standard on a motion to dismiss. *Esys Latin Am., Inc. v. Intel Corp.*, 925 F. Supp. 2d 1306, 1309 (S.D. Fla. 2013).

## III.     STANDARD FOR INTERPRETATION OF INSURANCE CONTRACTS

The parties appear to be in agreement that the Florida law governs the interpretation of the policies at issue. The core tenet of Florida insurance law is that every insurance policy is construed according to its plain language. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Where the language of an insurance policy is plain and unambiguous, "there is no need for judicial construction and the contract must be enforced as written." *Fla. Power & Light Co. v. Penn Am. Ins. Co.*, 654 So. 2d 276, 278 (Fla. 4th DCA 1995) (citing *Great Global Assur. Co. v. Shoemaker*, 599 So. 2d 1036 (Fla. 4th DCA 1992)). The policy terms must be given the plain and ordinary meaning as understood by the "average man." *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997).

If a policy provision is clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning, and should simply enforce it according to its terms, whether it is a basic insuring clause or an exclusionary provision. *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985); *see also Allstate Ins. Co. v. Shofner*, 573 So. 2d 47, 49 (Fla. 1st DCA 1990) (holding that ambiguities are to be construed in favor of coverage

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

but only after ordinary rules of construction are applied). In other words, in the absence of ambiguity, courts are not permitted to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the manifest intention of the parties. *Shofner*, 573 So. 2d at 49.

With that in mind, general liability insurance policies may impose two duties on the insurer, a duty to defend and a duty to indemnify. The duty to indemnify is fairly straightforward, and is defined by the individual policy. The duty to defend under an insurance contract, on the other hand, is broader than and separate from the duty to indemnify. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 19 (Fla. 2004). As a result, a duty to defend can initially exist even in situations where there is ultimately no duty to indemnify. *See Colony Ins. Co. v. G & E Tires & Serv. Inc.*, 777 So. 2d 1034, 1036-37 (Fla. 1st DCA 2000).

With respect to determining the duty to defend, Florida follows the so-called "eight corners rule." *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. 4th DCA 2015); *see also Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864-65 (11th Cir. 2014) (applying Florida law). The "eight corners" refer to the four corners of the complaint and the four corners of the insurance policy. *See Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 575 (Fla. 1st DCA 2010). Thus, when the complaint alleges facts that fairly and potentially bring the suit within policy coverage, the duty to defend exists. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). However, where the insurer has no duty to defend, it necessarily has no duty to indemnify. *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995). Furthermore, Florida courts have provided exceptions to the "eight corners rule." In particular, if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggesting

the existence of evidence establishing coverage, the carrier is relieved of defending. *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995).

To that end, Rosen's Motion for Judicial Notice should be denied. The other policies and policy forms that Travelers and St. Paul had access to when these policies were issued is irrelevant. Furthermore, even if the existence of other available coverage forms *were* relevant, Rosen's argument on this point would fail because the forms in question were not available for use prior to the issuance of the two policies under review in this case. Rosen simply misstates the record when it argues that a data breach-related endorsement was available for use by Travelers in "mid-2014" (Motion at 8). In fact, Rosen's own filings in this lawsuit clarify that the Florida Office of Insurance Regulation did not expect Travelers to use such forms until March 2015 – after the 2015-2016 Policy was issued. [D.E. 37-1, at 170].

What *is* relevant is the particular insurance contracts presently before the Court. However, to the extent the Court departs from the eight corners rule and also considers extrinsic evidence, it should also consider the fact that—when these same policies were issued—many insurance carriers, including Travelers, sold cyber coverage that potentially provides coverage for data breach claims. Rosen did not purchase this coverage for its companies.

## IV.   TRAVELERS HAS NO DUTY TO DEFEND BECAUSE THE "CLAIM" DOES NOT FALL WITHIN A COVERAGE PROVISION OF THE POLICIES.

### A.   There Is No Claim.

The "claim" asserted in this matter that allegedly triggers St. Paul's duty to defend is so vague as to be a nullity. It is also so transparently an attempt to manufacture coverage by having one member of a corporate family issue a demand to its corporate sister that it is unclear whether

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394• (954) 377-8100

it is a claim at all. The alleged claim, written by Frank Santos on the Hotel's letterhead and sent

to Tamara Flores of Millennium, reads, in relevant part:

> As you are aware, [the Hotel] became aware of a data breach in
> March of 2016, in which [Millennium] made private information
> known to third parties that violated a credit card holder's right of
> privacy. [The Hotel] has incurred damages thus far in the amount
> of $1,402,970 and anticipates significant additional damages. [The
> Hotel] hereby demands [Millennium] to immediately pay [the
> Hotel] damages relating to the data breach in the amount of
> $1,402,970 plus any additional damages which will be incurred.
>
> Please put your insurance company on notice regarding this claim
> immediately.

A complete copy of this document was attached to the Amended Complaint as Exhibit "D" at

[D.E. 32-4]. Frank Santos is the registered agent and a vice president of Millennium. He is also

the registered agent and a vice president of the Hotel. Similarly, public filings show that Harris

Rosen is Chairman and President of both entities, and Daniel Guttierez is Vice President of

Engineering and Facilities of both entities.[3] The so-called "claim" is essentially a demand from

Mssrs. Santos, Rosen and Guttierez to themselves. This highly unusual circumstance calls into

---

[3] Compare http://bit.ly/2z2Zkj8 (Corporate information for Millennium) (last visited
10/12/2017) with http://bit.ly/2yHNb7u (Corporate information for the Hotel) (last visited
10/12/2017). Sunbiz profiles can be judicially noticed under Fed. R. Evid. 201 because the
Florida Department of State's website is a verified website from a public agency. *Demeter v.
Little Gasparilla Island Fire & Rescue, Inc.*, No. 2:16-cv-264-FtM-38CM, 2017 WL 662006, at
*2 (M.D. Fla. Feb. 17, 2017); *see also Sziranyi v. Allan R. Dunn, M.D., P.A.*, No. 07 CV
21762(SJ), 2009 WL 6613675, at *2 n.2 (S.D. Fla. Sept. 30, 2009) (taking judicial notice of
Sunbiz filings). The court is respectfully requested to do so.

doubt whether the letter constitutes a "claim" and creates enough of a question of fact to avoid judgment on the pleadings.[4]

Furthermore, the "claim" merely parrots—almost verbatim—the language in the coverage provision for personal injury. That provision covers "amounts any protected person is legally required to pay as damages for coverage personal injury that…is caused by a personal injury offense." "Personal injury offense" is then further defined as, *inter alia*, "making known to any person or organization covered material that violates a person's right of privacy." This is almost identical to the language used in the "claim", which alleges that "[Millennium] made private information known to third parties that violated a credit card holder's right of privacy." *See Chalk v. Trans Power Mfg., Inc.*, 451 N.W.2d 770, 774 (Wisc. Ct. App. 1989) (discounting whether a claim was made where the demand closely tracked the language of the policy).

Most importantly, however, the "claim" does not allege any action on behalf of Millennium, either negligently or intentionally, that would render it liable to the Hotel. The first allegation is that Millennium "made known" private information. The second allegation is that the *Hotel* (not any particular cardholder) incurred damages.[5] The second statement is a non-sequitur. There is no allegation that would support any theory of recovery by the Hotel against

---

[4] Indeed, the highly unusual nature of this "demand" is demonstrated by the difficulty in envisioning what a defense counsel would do if St. Paul were to appoint one to defend Millennium against the Hotel. Could counsel have privileged conversations with the officers of Millennium about the strengths and weaknesses of the "claim" that would be shielded from the officers of the Hotel? This difficulty is further compounded by the fact that in *this* case, both the Hotel and Millennium are represented by the same counsel, a curious decision if the two parties are truly adverse to one another.

[5] Those damages are believed to be, *inter alia*, the costs the Hotel incurred in responding to the breach, including credit card fines and penalties, the cost of conducting a forensic investigation, and the costs of complying with various data breach notification laws.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Millennium. Nothing in the "claim" itself alleges any relationship between the Hotel and Millennium.

### B.   To The Extent There Is A Claim, There Is No Personal Injury.

#### 1.   St. Paul Did Not Waive Its Defense to Coverage.

Rosen's contention that St. Paul admitted that the claim could be covered takes cherry picking to new heights. Rosen points to a sentence from a letter sent by St. Paul on June 16, 2017, where it claims St. Paul said "although [the Hotel's] claim…could potentially fall within the policy's definition of 'personal injury'". Rosen conveniently leaves out the rest of the sentence, however, which in its entirety reads: "Although a claim for 'making known…covered material that violates a person's right of privacy,' could potentially fall within the policy's definition of 'personal injury', the June 5, 2017 demand letter provides no facts to support [the Hotel's] conclusion that Millennium made known [the Hotel's] customers' private information to third parties. It also provides no details as the [sic] nature of the claimed damages." [D.E. 32-5, at 9]. In short, St. Paul did not admit that the claim could be covered. It argued (as noted *supra*) that the claim was so vague it was impossible to tell whether a duty to defend existed at all. In any event, it is bedrock Florida insurance law that, subject to very limited exceptions not present here, there can be no insurance coverage by estoppel. *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 661 (Fla. 1987).

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

### 2. Because The Hotel Did Not Have a Privacy Right Violated, It Has No Claim Against Millennium.

As set forth above, the relevant definition of a personal injury offense is "Making known to any person or organization covered material[6] that violates a person's right of privacy." With respect to the "right of privacy" argument, Rosen points to *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) for the proposition that where there has been a data breach resulting in the theft of personal information, that is a sufficient privacy injury for purposes of meeting the standards of pleading to bring a claim. That statement is generally true, but the facts in *Resnick* are critically different from this case. *Resnick* was a suit by the individuals who actually had their information stolen against the party that allowed the breach to occur. On the contrary, this case involves the Hotel making a purported claim against Millennium for the loss of customer data. The Hotel has no privacy interest of its own in its customers' data. Indeed, corporations do not have a "personal privacy" interest at all. *FCC v. AT&T, Inc.*, 562 U.S. 397, 406 (2011) (noting that the specific concept of personal privacy did not apply to corporations as a matter of common law); *see also Alterra Healthcare Corp. v. Estate of Shelley*, 827 So. 2d 936, 941 (Fla. 2002) (noting that the right to privacy inures only to natural persons and that under normal circumstances, a litigant must assert his or her own legal rights and interests, not those of third parties). Nothing in *Resnick* suggests that its conclusions about standing would or should be extended to allow a third-party depository of data to assert a claim on behalf of its customers for the loss of that data. *See Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1334 (S.D. Fla. 2009) ("By enacting a law designed to protect the privacy of card

---

[6] St. Paul does not contest that the information obtained in the hack qualifies as "covered material."

holders' complete payment card account numbers, Congress, at the very least, recognized a ***card holder's right of privacy*** in the card holder's complete card account number and account information, and a corresponding right of privacy not to have that information exposed on an electronically printed payment card receipt.") (emphasis added), *rev'd on other grounds*, 444 F. App'x 370 (11th Cir. 2011).

In short, the alleged "claim" made by the Hotel does not set forth a privacy right *of its own* that has been violated. Instead, it refers to violation of a "credit card holder's right of privacy." The Hotel does not have standing to make a claim on behalf of a credit card holder. *See P.F. Chang's China Bistro, Inc. v. Fed. Ins. Co.*, No. CV-15-01322-PHX-SMM, 2016 WL 3055111, at *5 (D. Ariz. May 31, 2016) (holding that card issuers could not make claim for privacy damages and that such claim could only be made by a cardholder). The policy, like all general liability policies, is designed to provide coverage to the insured for actions that it took when those actions cause harm to a particular plaintiff. It is not designed, nor is it intended, to protect against claims by companies which—by their own admission—have not had a right violated. *See City of Delray Beach v. Agric. Ins. Co.*, 936 F. Supp. 931, 939 (S.D. Fla. 1994) (holding that there was no personal injury coverage available to the insured City of Delray Beach in connection with environmental contamination because personal injury offenses "relate to the violation of private rights," there was no charge against the insured by a private occupant of the city's water supply, and accordingly there could be no "invasion of the right of private occupancy").

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

### 3. Because Millennium Did Not Publish The Data In Question, The "Making Known" Requirement Has Not Been Met.

The relevant definition of personal injury also requires that the insured "mak[e] known" the covered material. Contrary to Rosen's briefing, the term "making known" is, at broadest, synonymous with the more common "publication." *See State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 104 Cal. Rptr. 3d 573, 587 (Cal. Ct. App. 2010) ("The distinction lies chiefly in the use of the word 'publication' rather than the phrase 'making known to any person or organization.' We find it to be one without a difference."). Where courts find the terms to differ, "making known" is construed to be *more* specific than "publication", thereby making coverage more difficult to establish. *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 821 (8th Cir. 2012) (applying Minnesota law) ("We agree…that 'publication' is more general than 'making known.'"). In any event, it is undisputed that Millennium did not itself actively or intentionally publish the information, nor is it accused of having done so. Third-party hackers potentially did.

Although no Florida court has expressly reached this issue, the general consensus among courts nationwide is that coverage for "personal injury" in general liability policies[7] is intended to protect against purposeful acts committed by the insured or its agents, not by non-insureds or third parties. *See Cnty. of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994) ("[C]overage under the personal injury endorsement provision in question was intended to reach only purposeful acts undertaken by the insured or its agents."); *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1025 (6th Cir. 1995) ("[E]ach enumerated tort in the personal injury clause requires an intentional act."); *Gregory v. Tenn. Gas Pipeline Co.*, 948 F.2d 203, 209 (5th

---

[7] "Personal injury" and "advertising injury" are oftentimes referred to as "Coverage B", as opposed to "Coverage A", which is for bodily injury and property damage.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Cir. 1991) (holding that "each of the enumerated risks specifically assumed [in Coverage B] requires active, intentional conduct by the insured."); *Stonelight Tile, Inc. v. Cal. Ins. Guar. Ass'n*, 58 Cal. Rptr. 3d 74, 89 (Cal. Ct. App. 2007) ("Unlike liability coverage for property damage or bodily injury, personal injury coverage is not based on an accidental occurrence."); *Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489, 510-11 (Conn. 2002) ("[P]ersonal injury provisions were intended to reach only intentional acts by the insured."); *Liggett Grp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024, 1032 (Del. 2002) (holding that Coverage B "clearly do[es] not extend coverage to negligence claims".); *Butts v. Royal Vendors, Inc.*, 504 S.E.2d 911, 917 (W. Va. 1998) (holding that Coverage B "was not written to cover publication by a third-party.").

In this case, the Hotel has attempted to manufacture a claim by blankly stating that "[Millennium] made private information known to third parties that violated a credit card holder's right of privacy." However, it is well-established under Florida law that the use of "conclusory 'buzz' words unsupported by factual allegations are not sufficient to trigger coverage." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580-81 (Fla. 4th DCA 2000)); *see also Sigma Tech Sales, Inc. v. Travelers Indem. Co.*, No. 08-60772-CIV, 2009 WL 413514, at *3 (S.D. Fla. Feb. 19, 2009). The purported "demand" contains no facts other than that "[the Hotel] became aware of a data breach in March of 2016." It does not—and cannot—provide any facts supporting a contention that the Millennium purposefully "made known" covered material. There are no facts establishing that Millennium inflicted "personal injury" on the Hotel.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

    **4.**    **Most Courts That Have Considered The Issue Have Found That Data Breaches Committed By Third Parties Are Not Covered By CGL Policies.**

Rosen cites to a number of cases—including many involving Travelers—that purportedly hold that data breaches are covered by general liability policies. A brief review of those cases quickly shows that Rosen's position is without merit. Most notably, **none** of the cases cited by Rosen involved a hack of data systems by a third-party where a court rendered a decision on the merits.

Rosen relies heavily on *Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, LLC*, 35 F. Supp. 3d 765 (E.D. Va. 2014). In *Portal Healthcare*, Travelers' insured (Portal Healthcare) was subject to a class action lawsuit in which it was alleged that Portal posted confidential medical records on the internet, making the records available to anyone who searched for a patient's name. Travelers had issued two general liability policies to Portal that were similar to the policies at issue in the case *sub judice*.[8] The *Portal Healthcare* opinion does not specify whether Travelers defended under a reservation or denied coverage. In any event, the parties filed cross-motions for summary judgment on the duty to defend.

Ultimately, the Court concluded that exposing material to the online searching of a patient's name constituted publication. It also found that the public information of a patient's confidential medical records gave "unreasonable publicity" to the patient's private life and "disclosed" information about that patient's private life. *Portal Healthcare* was eventually upheld

---

[8] In *Portal Healthcare*, the policy defined personal injury as "the electronic publication of material that gives unreasonable publicity to a person's private life" and "the electronic publication of material that…discloses information about a person's private life."

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

on appeal to the Fourth Circuit. *Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, LLC*, 644 F. App'x 245 (4th Cir. 2016).

The facts in *Portal Healthcare* differ critically from the case at bar. In *Portal Healthcare*, the insured itself was found to have "published" the data by making it available to search engines. *Portal Healthcare* did not involve a hack, where a third party gained access to the insured's system.[9] Although the Court in *Portal Healthcare* observed that "unintentional publication is still a publication," it did so in the context of Travelers' argument that there was no publication because it was Portal's intention to keep the medical records private. Again, it was *Portal itself* that was found to have made the publication. Portal was not hacked.

Rosen also makes reference to *Travelers Indem. Co. of Conn. v. P.F. Chang's China Bistro, Inc.*, No. 14-1458 (D. Conn.). That case carries even less weight than *Portal*, as the court closed it before reaching a decision, ostensibly due to delays in the underlying tort litigation. In any event, Rosen argues that because Travelers lost in *Portal* and didn't change the policy between then and the *P.F. Chang's* case, it implicitly recognized that data breach would be covered by the policy. This argument is flawed for several reasons. First, when *P.F. Chang's* was filed, *Portal* was still on appeal in the Fourth Circuit. Second, the two cases were filed in different states. And most importantly, the facts themselves were different. In *P.F. Chang's*, hackers gained access to credit card information, much like with Rosen. In that way, *P.F.*

---

[9] Indeed, that did not even happen in this case. In this case, hackers gained access to the systems of the Hotel, which allegedly contracted with the insured (i.e., Millennium). In other words, here the policyholder is at least two degrees separated from the parties that exposed the private information.

*Chang's* is actually much more relevant to the instant case—or would be, if a decision had ever been rendered.[10]

Rosen cites three other non-Travelers cases for the proposition that GL policies cover data breaches. Their citations to *Evanston Ins. Co. v. Gene By Gene, Ltd.*, 155 F. Supp. 3d 706 (S.D. Tex. 2016) and *Hartford Cas. Ins. Co. v. Corcino & Assocs.*, No. CV-13-3728 GAF (JCx), 2013 WL 5687527 (C.D. Cal. 2013) are inapposite for the same reason as their cite to *Portal* — in each case the "breach" was the insured themselves actually publishing the confidential information. There was no hack in either case. Their citation to *Am. Econ. Ins. Co. v. Aspen Way Enters., Inc.*, No. 14-09-BLG-SPW, 2015 WL 5680134 (D. Mont. 2015) carries even less weight. This unreported case out of Montana involved the insured installing what amounted to spyware on its customers' computers. To the extent there was a "hack" in *Aspen Way*, it was perpetrated *by* the insured.

In fact, Rosen relegates the most relevant case to a footnote. That case is the "Sony Data Breach" case, *Zurich Am. Ins. Co. v. Sony Corp. of Am.*, No. 651982/2011, 2014 WL 8382554 (N.Y. Sup. Ct. Feb. 21, 2014). In the Sony Data Breach case, hackers gained access to Sony's PlayStation online services, where they obtained customers' credit card information. That decision held that there was no coverage for a data breach under the general liability policies issued by Zurich. The relevant coverage language for personal injury involved "publication, in any manner, of material that violates a person's right of privacy." The Court plainly held that this coverage provision—substantially similar to the one issued by St. Paul—only applies when the

---

[10] In any event, it is still different inasmuch as the underlying claim in *P.F. Chang's* was by credit card holders against the restaurant. Here, the claim is by the Hotel (the party actually breached) against its IT company.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

*policyholder* makes the publication. It does *not* apply in the case of a hack by a third party.[11] As noted *supra*, this has generally been the rule nationwide with respect to personal injury liability. Because Millennium did not make, and is not alleged to have made, a purposeful publication, there is no coverage.

### C.   To The Extent There Is A Claim, There Is No Property Damage.

In its last attempt to obtain coverage for this loss, Rosen makes the remarkable claim that because the Hotel's customers may have needed to have their credit cards replaced, "property damage" has occurred.[12]

It cannot be overstated that even if "property damage" occurred, that property damage was not suffered by the Hotel, which is the putative claimant. If anyone suffered "property damage" within the meaning of the policy (and St. Paul does not concede that any such damage occurred), it would have been the customers, not the Hotel.

St. Paul does not (and cannot) contest that in the strict sense of the word, credit cards are "tangible property." However, the argument that property damage has thus occurred is nonetheless fatally flawed. As a district court in the Northern District of Alabama recently explained in response to a similar argument:

> The Credit Unions do not assert that [the insured's] acts or omissions caused physical harm or damage to any cards as tangible property. Rather, the Credit Unions assert that [the insured's] lax computer network security allowed the *intangible electronic data*

---

[11] It is true that the Sony Data Breach decision was appealed, and that the matter settled prior to disposition. However, in the absence of a reversal by the appellate court, the Sony Data Breach opinion remains persuasive law. It is also worth noting that, like the *P.F. Chang's* case, the underlying claim against Sony was a class action by those who actually had their credit card information stolen, not by a third-party, as here.

[12] The policy defines "property damage" in relevant part as "loss of use of tangible property of others that isn't physically damaged."

- 16 -

> *contained on the cards* to be compromised such that the magnetically encoded card numbers could no longer be used, causing purely economic loss flowing from the need to issue replacement cards with new electronic data….As a result, the Credit Unions' claims for damages arising out of [the insured's] allegedly unlawful handling of electronic data on the credit cards are not claims for "property damage" under the Policy and are excluded from coverage.

*Camp's Grocery, Inc. v. State Farm Fire & Cas. Co.*, No. 4:16-cv-0204-JEO, 2016 WL 6217161, at *8 (N.D. Ala. Oct. 25, 2016) (emphasis in original). Of course, the "claim" in question does not allege property damage at all, much less property damage stemming from the replacement of credit cards. Neither the Hotel nor Millennium has provided any evidence that any allocation of the fines and penalties levied by the card issuers has been set aside for "property damage." And for good reason. To the extent any party has a "loss of use" claim, it is not the credit card company, it is the customer.[13] No customer has made a claim against either the Hotel (which is not an insured, in any case) or against Millennium to St. Paul's knowledge.

**D.  The Cost of Compliance With Notification Statutes Is Not Covered.**

The damages apparently claimed by the Hotel against Millennium form some combination of fees and penalties applied by the credit card companies and the general costs of complying with various data breach notification laws. Such damages are not covered by a general liability policy. *Recall Total Info. Mgmt., Inc. v. Fed. Ins. Co.*, 83 A.3d 664 (Conn. App. Ct. 2014), *aff'd*, 115 A.3d 458 (Conn. 2015).

---

[13] To be clear, St. Paul agrees with State Farm's argument in *Camp's Grocery* that a credit card is just a physical manifestation of intangible property. *See R&L Zook, Inc. v. Pac. Indem. Co.*, No. 07-03774, 2008 WL 1931006, at *4 (E.D. Pa. May 1, 2008) ("A check is not 'tangible property' because it does not have intrinsic value. Similar to stock certificates, promissory notes, and credit cards, checks merely represent value.").

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

*Recall* did not involve a hack. Instead, the insured, a records storage company, contracted with IBM to transport and store certain employee records on data tapes. Recall then entered into a subcontract with a company called Ex Log to actually transport the tapes. In transport, the tapes fell off the back of a truck, were taken from the roadside by an unknown person, and were otherwise never recovered. IBM claimed approximately $6 million in expenses related to fraud protection and credit monitoring, and negotiated a settlement with Recall for the full amount of the loss. Recall sought indemnification from Ex Log, and Ex Log made a claim on its general liability policy. The insurer denied coverage, Ex Log and Recall settled, and Recall pursued claims against the insurer.

The Court concluded, *inter alia*, as follows:

> In this case, IBM claims to have suffered a loss of more than $6 million related to the alleged compliance with these notification statutes. While we do not speculate as to whether these expenditures were required by law, we conclude that they do not constitute a personal injury as defined in the policy. These notification statutes simply do not address or otherwise provide for compensation from identity theft or the increased risk thereof, they merely require notification to an affected person that he may protect himself from potential harm. Accordingly, merely triggering a notification statute is not a substitute for personal injury.

*Recall*, 83 A.3d at 464. Although St. Paul has never been provided with an itemized breakdown of the alleged damages, at least some of the money the Hotel is claiming from Millennium is as a result of its compliance with notification statues. That amount is clearly not covered.

Furthermore, despite Rosen's arguments to the contrary, the contract liability exclusion applies. That exclusion provides that "We won't cover injury or damage for which the protected person has assumed liability under any contract or agreement." The fines and penalties levied by

the card issuers were the result of a contract between the Hotel and the card issuers.[14] Previous courts have determined that such fines and penalties fall squarely within the contract liability exclusion, and are not covered. *See P.F. Chang's*, 2016 WL 3055111, at *8.

## V. <u>CONCLUSION</u>

This is a case where a non-insured entity, the Hotel, was hacked by third parties. The hackers gained access to the Hotel's customers' credit card information. Millennium did not publish or "make known" that information. Millennium's role was to set up a security system that appears to have ultimately been ineffective. Nonetheless, Rosen is attempting to pay for the Hotel's losses by having the Hotel send a bare-bones, pretextual "demand letter" to its corporate sister with conclusory allegations intended to trigger liability coverage.

The Hotel—the only claimant against Millennium—has not and cannot create a claim against Millennium that would trigger coverage under a general liability policy. As discussed above, the personal injury coverage provided by general liability policies simply does not apply to cases where data breaches occurred on account of a hack. Personal injury coverage requires that the insured take some affirmative action. Millennium is not alleged to have done any such thing, and the Hotel's attempt to trigger coverage by the use of conclusory buzz words cannot create coverage. Nor has the Hotel alleged to have suffered property damage. To the extent the temporary loss of use of credit cards constitutes "property damage"—which is disputed—such property damage can only be claimed by the Hotel's customers, not the Hotel itself. The Hotel has not and cannot state a claim for its own damaged property because none exists.

---

[14] Although St. Paul does not have a copy of any agreement between the Hotel and Millennium, it finds it highly unlikely that one does not exist. That potential contract may provide an additional basis for applying the contract liability exclusion.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

WHEREFORE, St. Paul Fire & Marine Insurance Company respectfully requests that the Court deny the Defendants' Motion for Judgment on the Pleadings and grant any further relief that the Court deems just and appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I hereby certify that on October 12th, 2017, the foregoing document was electronically 1filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ *Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:    (954) 377-8101

## SERVICE LIST

### CASE NO. 6:17-CV-540-ORL-41-GJK

Scott N. Godes, Esq.
Barnes & Thornburg LLP
1717 Pennsylvania Avenue N.W.
Suite 500
Washington, D.C. 20006-4623
E-Mail: scott.godes@btlaw.com;
Carrie.Raver@btlaw.com;
John.Meyers@btlaw.com
Telephone: (202) 408-6928
Facsimile: (202) 289-1330
Attorney for Rosen Millennium Inc.

Darryl R. Richards, Esq.
Johnson, Pope, Bokor, Ruppel & Burns, LLP
401 E. Jackson Street, Suite 3100
Tampa, FL 33602
E-Mail: darrylr@jpfirm.com;
gwenb@jpfirm.com
Telephone: (813) 225-2500
Facsimile: (813) 223-7118
Attorney for Rosen Millennium Inc.

4849-6686-7025, v. 4

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100