UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a foreign corporation,

    Plaintiff,

v.

ROSEN MILLENNIUM INC., d/b/a/ ROSEN MILLENNIUM TECHNOLOGY GROUP, a Florida corporation, and ROSEN HOTELS & RESORTS, INC., a Florida corporation,

    Defendants.

CASE NO. 6:17-CV-540-ORL-41-GJK

## ST. PAUL'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND RESPONSES TO RULE 30(b)(6) TESTIMONY

    Plaintiff, ST. PAUL FIRE & MARINE INSURANCE COMPANY ("St. Paul"), by and through undersigned counsel, files this Response to Defendants' Motion to Compel the Production of Documents and Responses to Rule 30(b)(6) Testimony (the "Motion"), and states as follows.

**I.**     **INTRODUCTION**

    At its core, this dispute involves an attempt by one member of the Rosen corporate family (Rosen Hotels & Resorts, or the "Hotel") to recover its losses in connection with a hacking event by seeking proceeds from a liability policy issued to a separate member of the Rosen corporate family (Millennium Technology Group, or "Millennium"). St. Paul has questioned whether the "demand letter" that the Hotel sent Millennium is bona fide, in addition to whether there is coverage for such a data breach under the commercial general liability policy St. Paul issued to Millennium.

During the course of discovery, Millennium and the Hotel requested a litany of documents and information relating to a variety of patently irrelevant topics: other forms St. Paul could have used, documents provided to the Florida Department of Insurance, underwriting materials, reinsurer information, and other areas that the Defendants have meticulously documented in the Motion [D.E. 63]. They assert that they require this information in order to "establish[] their affirmative defenses that the terms of the Policies are vague and ambiguous as written and applied." [D.E. 63, at 6]. Unfortunately, the Defendants have the law backwards. Before obtaining extrinsic evidence regarding ambiguity, the Defendants must first make a prima facie case that the Policy is, in fact, ambiguous. Yet, in nearly 60 pages of briefing (between both the Defendants' Motion for Partial Judgment on the Pleadings and the instant motion to compel), the Defendants have utterly failed to do so. The Court should thus recognize this attempt for what it is—a transparent attempt to *create* an ambiguity, not to clarify one. *See Grayned v. Rockford*, 408 U.S. 104, 110 n.15 (1972) ("It will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.") (internal quotations omitted). The Motion should be denied.

## II. ST. PAUL SHOULD NOT BE REQUIRED TO PROVIDE IRRELEVANT DOCUMENTS AND TESTIMONY WHEN THE DEFENDANTS HAVE FAILED TO MAKE A PRIMA FACIE CASE THAT THE POLICY IS AMBIGUOUS.

### A. Standard for Interpreting Insurance Contracts

The parties agree that the Florida law governs the interpretation of the policies at issue. The core tenet of Florida insurance law is that every insurance policy is construed according to its plain language. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Where the language of an insurance policy is plain and unambiguous, "there is no need for judicial construction and the contract must be enforced as written." *Fla. Power & Light Co. v. Penn Am.*

- 2 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

*Ins. Co.*, 654 So. 2d 276, 278 (Fla. 4th DCA 1995) (citing *Great Global Assur. Co. v. Shoemaker*, 599 So. 2d 1036 (Fla. 4th DCA 1992)). The policy terms must be given the plain and ordinary meaning as understood by the "average man." *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997).

If a policy provision is clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning, and should simply enforce it according to its terms, whether it is a basic insuring clause or an exclusionary provision. *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985); *see also Allstate Ins. Co. v. Shofner*, 573 So. 2d 47, 49 (Fla. 1st DCA 1990) (holding that ambiguities are to be construed in favor of coverage but only after ordinary rules of construction are applied). In other words, in the absence of ambiguity, courts are not permitted to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the manifest intention of the parties. *Shofner*, 573 So. 2d at 49.

### B.  The Underwriting File and Drafting History

As a general rule, although the contents of the underwriting file *may* be discoverable in a bad faith action, they are generally *not* discoverable in a declaratory judgment action or breach of contract action absent an ambiguity. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 702 (S.D. Fla. 2007). Contrary to the Defendants' arguments, there are no underwriting issues in this case. The fact that St. Paul made general references to underwriting materials in the claims adjustment process, but which were not cited as a basis for questioning coverage in the declaratory judgment action, does not make the underwriting "at issue."[1] St. Paul did not deny coverage because of any

---

[1] The same goes for the testimony of St. Paul's corporate representative, which the Defendants cited in the Motion.

- 3 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

representations or misrepresentations made during the underwriting process, and St. Paul readily concedes that there is no exclusion in the policy that would apply based solely on the relationship between the Hotel and Millennium.[2]

The Defendants further assert that they are entitled to the underwriting file because they have asserted that the Policy is ambiguous. But a bare assertion that the Policy is ambiguous is not enough. The Defendants point to their affirmative defense that the Policy was ambiguous. Yet the referenced affirmative defense (Affirmative Defense No. 7) is the very definition of conclusory:

> "The terms of the Policies are vague and ambiguous as written and applied."

Defendants' mere invocation of the word "ambiguous" does not grant them the right to seek discovery of extrinsic evidence. The guidance from *Milinazzo* is directly on point:

> "If Plaintiff believes that documents in the underwriting file could lead to admissible evidence, **Plaintiff would have to make a prima facie showing that material provisions of the policy are ambiguous**; namely, the definition of the term 'qualified vehicle.' If Plaintiff makes that claim, Plaintiff could then try to argue that underwriting related documents could be used to resolve that ambiguity."

*Milinazzo*, 247 F.R.D. at 702-03 (emphasis added). Here, despite the opportunity to do so in their affirmative defenses, in briefing their motion for judgment on the pleadings, and in briefing the instant Motion, the Defendants have not made even a prima facie case that the Policy is ambiguous in any way. Defendants have only made conclusory allegations.

However, it is important to note that even if the Defendants *could* identify an ambiguity in the Policy, that would not render the underwriting file admissible. Magistrate Judge Brown's

---

[2] Whether any potential misrepresentations made during the underwriting process may create grounds for rescission—separate and apart from the coverage issues in this case—was not pled and is not at issue in this case.

- 4 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

decision in *Sentry Select Ins. Co. v. Seatruck, Inc.*, 09-23566-CIV, 2010 WL 11553379 (S.D. Fla. June 15, 2010) is instructive. There, the insured moved to compel certain discovery it intended to use in order to establish an ambiguity. The court noted, as here, that the only place the ambiguity issue arose was within an affirmative defense that did not explain why the words in the policy were ambiguous. *Id.* at *1. The Court's conclusion was succinct and incisive:

> While the Court recognizes that there is a difference between discovery and admissibility, this Court is unwilling to allow wholesale discovery of what would otherwise be prohibited at this time based merely on the conclusory use of 'magic words'. It is important to note that a party cannot use discovery to prove the alleged ambiguity. That determination is governed by the four corners of the policy. *See, e.g.*, *Shipner v. Eastern Air Lines, Inc.*, 868 F. 2d 401, 405 (11th Cir. 1989). As one Court has previously noted, for an ambiguity to exist in a contract, it must exist in the contract, not outside of it. *See Bowen v. Cullman Bros., Inc.*, 414 F.2d 739 (5th Cir. 1969).

*Seatruck*, 2010 WL 11553379, at *1. In short, for the Defendants to seek outside material in order to establish an ambiguity is to put the cart before the horse. The Defendants must first establish that there **is** an ambiguity before the parties are required to open wide the doors of discovery. They have failed to do so, and cannot meet the threshold showing of relevancy to compel such documents. *Id.* at *2.

As to the Defendants' specific references to particular underwriting materials, none are persuasive. In addition to the reasons discussed above, insurance binders merge into the subsequently issued policy, such that the terms and conditions of the policy—in the case of a conflict or ambiguity—control. *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1541 (11th Cir. 1990). What the binder says or does not say is irrelevant. Once the Policies were issued, they controlled over the binders.

- 5 -

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394• (954) 377-8100

The Defendants' attempt to compel responses to interrogatories no. 5 and 6 (related to the drafting of the St. Paul policies) is unavailing. Once again, the Defendants put the cart before the horse. The Defendants do not get "information that will aid in interpreting the policy" without making a prima facie case that the Policies are actually ambiguous. *Milinazzo*, 247 F.R.D. at 702-03. Again, this is because—as noted in St. Paul's objection—insurance policies are interpreted according to their plain language, not the subjective intent of the parties. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Baldassini*, 909 F. Supp. 2d 1363, 1366-67 (S.D. Fla. 2012). It simply does not matter who in the Travelers organization drafted the policy, or what they meant when they drafted it, because the policy says what it says. Absent a prima facie showing of ambiguity, such information is not discoverable. *Milinazzo*, 247 F.R.D. at 702-03. To that end, Defendants' citation to *Viking Yacht Co. v. Affiliated FM Ins. Co.*, 2008 WL 8715540 (S.D. Fla. Feb. 7, 2008) is unavailing. *Viking* held that drafting history and extrinsic evidence of interpretive material is discoverable "when questions regarding ambiguity have not been resolved." *Id.* at *2. Here, there are no questions regarding ambiguity, only "magic words" in the Defendants' affirmative defenses. *Seatruck*, 2010 WL 11553379, at *1. Such is insufficient to merit discovery into patently irrelevant areas.

### C. The Claims File, Guidelines, and Best Practices

The Defendants attempt to gain access to the claims file, claim handling standards, and related manuals in order to show "how Travelers interpreted its insurance policies." Again, as has been previously discussed, how St. Paul interpreted its policies is completely irrelevant to whether there is coverage. *Travelers Indem. Co. of Ill. v. Hutson*, 847 So. 2d 1113, 1114 (Fla. 1st DCA 2003) ("Absent an ambiguity, interpretation of a contract is a question of law to be decided by the court. Whether an ambiguity exists in a contract is also a question of law.") (internal citations

- 6 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

omitted). The Defendants have failed to make even a prima facie case that the Policies are ambiguous. Furthermore, even to the extent that the parties disagree over the meaning of particular terms, disclosure of the insurance policy itself—which St. Paul has done—is all that is necessary. *Milinazzo*, 247 F.R.D. at 703 ("The fact that the parties dispute whether Plaintiff's automobile was a 'qualified vehicle' does not, in and of itself, make the term ambiguous and necessitate the disclosure of claims handling guidelines. As such, Defendant has complied with this discovery in full by disclosing the insurance policy.").

The Defendants also argue that the requested materials will show whether Travelers requires a policyholder to be the publishing party for personal injury coverage to apply. This assertion is dubious on its face, but is also irrelevant to the issue of coverage. *Seatruck*, 2010 WL 11553379, at *2 ("Coverage is determined by the policy, not what plaintiff did, or did not do, in other situations"). Similarly, to the extent the Defendants reference a "prior claim" involving the Hotel and Millennium, that purported prior claim is also irrelevant to the issue of whether there is coverage under the policy in the instant case.

Evidence of an insurance company's claims handling procedures is irrelevant to the determination of coverage and damages, and is only potentially relevant to a claim of bad faith, which has not been raised in this lawsuit. *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1381 (S.D. Fla. 2010). The Defendants appear to concede that they are only entitled to claim file materials up until, at the latest, the denial of coverage. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 628-29 (S.D. Fla. 2013).

In any event, all non-privileged material contained in the claim file concerning the hacking event has been provided to the Defendants up until the denial date. To the extent the Defendants seek to obtain the redacted portions of the claim notes, such portions are communications between

- 7 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

the adjuster handling the file and in-house counsel and discuss the pendency of litigation. These are the very definition of attorney-client privileged communications, and cannot be produced.

### D. St. Paul's Communications With Brokers and Reinsurers

The Defendants also insist that communications between St. Paul and its reinsurers are relevant and discoverable. St. Paul continues to assert that such documents and communications are neither relevant nor admissible. Nonetheless, St. Paul has reached an agreement to produce its reinsurance treaties and communications relating to this claim to the Defendants. St. Paul reserves its rights regarding the admissibility of such documents and by producing them does not waive any other objections raised herein or in its other discovery responses.[3] This portion of the Defendants' Motion to Compel is now moot.

### E. The Reserves

As noted in St. Paul's objection, reserve information is protected by work-product privilege and is irrelevant to determining St. Paul's duty to defend. In *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986), the court explained that reserve information—like reinsurance information—was not discoverable.

> Turning to the issue of reserves and reinsurance, after a thorough study of the court record, the Magistrate concludes that the motion to compel as to these issues should be DENIED as seeking information of very tenuous relevance, if any relevance at all. The Magistrate is persuaded by argument of counsel for Harbor Insurance Company that a reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and that such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis. This basic characteristic of reserve information was

---

[3] For example, the reinsurance communications contain certain references to St. Paul's reserves, which as set forth below, are not relevant. St. Paul expressly reserves its objection with respect to reserves.

- 8 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

>recognized by the court in *Union Carbide Corp. v. Travelers Indemnity Co.*, 61 F.R.D. 411 (W.D. Pa. 1973). Where the reserves have been established based on legal input, the results and the supporting papers most likely will be work product and may also reflect attorney-client privilege communications. Reinsurance information at this stage of the proceedings, and based on a review of the discovery record to date, appears to be no more relevant than reserve information.

The Defendants contend that "these documents are relevant because they relate to how [the Policies] should be interpreted, and may undercut Travelers' assertion that Hotels & Resorts cannot bring a claim against Millennium" Exactly *how* this information would relate to how the Policies should be interpreted is left to the Court's imagination. The fact that St. Paul may have placed reserves on the claim in this case has no bearing on whether or not there is coverage, and is accordingly irrelevant.

    **F.**    **Interpretation of Personal Injury Coverage for Data Breaches Under CGLs and Cybersecurity Coverage**

Once again, how Travelers may have interpreted a policy with different facts in different policies is entirely irrelevant. The policies must be interpreted according to their plain meaning. *See* Section II.A, *supra*. The Court is tasked in this case with interpreting the policies before it, not with evaluating positions that St. Paul or other members of the Travelers family may have made in other cases. Indeed, even other courts' decisions as to the policy forms at issue are not necessarily dispositive. *See Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1315 (S.D. Fla. 2010) ("The fact that different judges may have reached different interpretations of similar policy language does not necessarily mean that the language is ambiguous.").

The Defendants are more than capable of identifying prior data breach coverage cases with similar, if not identical, language, as this matter was thoroughly briefed in their Motion for Partial

- 9 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Judgment on the Pleadings. Indeed, several of the cited cases are Travelers cases. The Defendants do not need St. Paul to do their homework for them; if the Defendants see an ambiguity in the policy, they may argue it. But how St. Paul has handled other data breach claims—with different policies and different facts—is simply not relevant to whether *these* policies cover *this* loss.

As to the availability of cyber insurance, whether or not Travelers or St. Paul offered cyber insurance to either the Hotel or Millennium is beside the point. Clearly, they did not purchase it; this Court is tasked with interpreting the policies Millennium *did* buy, not policies it *could have* bought. The availability of cyber insurance from St. Paul is irrelevant.

### G. The Prior Demand by the Hotel to Millennium

Again, to the extent the Defendants reference a "prior claim" involving the Hotel and Millennium, that purported prior claim is also irrelevant to the issue of whether there is coverage under the policy in the instant case. Discovery into such issues would constitute a waste of both parties' resources.

### H. Communications Regarding Data Breach Exclusions

The arguments relating to filings with the Florida Department of Insurance have already been addressed in prior briefing—both in the Motion for Judgment on the Pleadings and in the Motion for Judicial Notice. Those arguments, along with the arguments presented *supra* regarding the interpretation of insurance contracts, are incorporated by reference. In short, regulatory filings are completely irrelevant to whether the policies purchased by Millennium cover this loss. The Defendants have failed to articulate why the policies are ambiguous, and have failed to explain why they cannot establish an ambiguity within the four corners of the policies themselves.

- 10 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

WHEREFORE, St. Paul respectfully requests that the Court deny the Defendants' Motion to Compel, and grant any further relief that the Court deems just and appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I hereby certify that on April 9th, 2018, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Rory Eric Jurman
Rory Eric Jurman

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

## SERVICE LIST

CASE NO. 6:17-CV-540-ORL-41-GJK

| | |
|---|---|
| Scott N. Godes, Esq.<br>Barnes & Thornburg LLP<br>1717 Pennsylvania Avenue N.W.<br>Suite 500<br>Washington, D.C. 20006-4623<br>E-Mail: scott.godes@btlaw.com;<br>Carrie.Raver@btlaw.com<br>Telephone: (202) 408-6928<br>Facsimile: (202) 289-1330<br>Attorney for Rosen Millennium Inc. | Darryl R. Richards, Esq.<br>Johnson, Pope, Bokor, Ruppel & Burns, LLP<br>Sun Trust Financial Centre<br>401 E. Jackson Street, Suite 3100<br>Tampa, FL 33602<br>E-Mail: darrylr@jpfirm.com;<br>gwenb@jpfirm.com<br>Telephone: (813) 225-2500<br>Facsimile: (813) 223-7118<br>Attorney for Rosen Millennium Inc. |

Respectfully submitted,

*/s/ Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101

- 12 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100